**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**ATLANTIC SPECIALTY INSURANCE COMPANY**                    **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO. 1:14CV23-SA-SAA
                                            LEAD CASE**

**WEBSTER COUNTY, MISSISSIPPI**                         **DEFENDANT**

CONSOLIDATED WITH

**WEBSTER COUNTY, MISSISSIPPI**                          **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO. 1:14CV53-SA-DAS**

**ATLANTIC SPECIALTY INSURANCE COMPANY**                  **DEFENDANT**

_____

**JOINT MOTION FOR APPOINTMENT OF UMPIRE**
_____

Atlantic Specialty Insurance Company ("Atlantic Specialty") and Webster County, Mississippi ("Webster County"), by and through their respective counsel, jointly move this Court for the appointment of a competent and impartial appraisal umpire as follows:

1.      This consolidated action arises from an insurance claim made by Webster County following a January 17, 2013 fire at the Webster County Courthouse in Walthall, Mississippi. The Webster County Courthouse was one of several county-owned properties insured under a commercial property policy issued by Atlantic Specialty.

2.      On November 24, 2014, the parties entered into an Agreement for Appraisal ("Appraisal Agreement"), under which certain aspects of Webster County's insurance claim will be submitted to appraisal for determination. A copy of the Appraisal Agreement is attached as

Ex. A.  The scope of the appraisal is the Replacement Cost Value and Actual Cash Value of the "cost to repair, rebuild or replace the damaged Courthouse with property of comparable material and quality as of the date and time of the loss."  The parties may also submit certain Extra Expense and Business Personal Property claim valuation issues to appraisal, if necessary.

3.     The Appraisal Agreement provides for an appraisal panel consisting of two party-appointed appraisers and an umpire. To this end, the parties have appointed their respective appraisers, with Atlantic Specialty appointing Jonathan C. Held of J.S. Held, Inc. and Webster County appointing Herman Johnson.  The parties have not been able to reach an agreement relative to the umpire of the appraisal panel and now seek to have this Court appoint the same.

4.     Paragraph 7(c) of the Appraisal Agreement sets forth the requirements and procedure for selection of an umpire.  It requires that the umpire selected by the parties or appointed by this Court be both "competent and impartial."  It requires that the party-appointed appraisers first attempt to agree on an umpire, failing which the parties themselves are to attempt to agree on an umpire. Where all such efforts at agreement are unsuccessful, the Appraisal Agreement provides that District Court Judge Sharion Aycock shall appoint the umpire, with the parties each submitting two umpire candidates to Judge Aycock for consideration.  The Appraisal Agreement does not restrict this Court to select one of the candidates submitted by the parties.

5.     Pursuant to Paragraph 7(c) of the Appraisal Agreement, Webster County submits the following two candidates for umpire, together with a brief statement as to the reasons Webster County believes the candidates meet the "competent and impartial" standard required to serve as an umpire in this matter.  Atlantic Specialty's objections to the candidates are also set forth below.

826448

**Webster County Umpire Nominee Lydia Quarles** (*See* <u>Ex. B</u>: CV)

    (a) <u>Webster County's Statement as to Ms. Quarles' Qualifications</u>:

Lydia Quarles is a Mississippi-certified mediator/arbitrator, and has practiced law in Mississippi for over thirty-five years. As such, Ms. Quarles is more than competent to determine the amount of loss to Webster County's insured property, which is a basic issue of fact. Ms. Quarles has stated that she has familiarized herself with Mississippi law regarding property insurance appraisals, and believes she is competent to act as the umpire in this appraisal. Ms. Quarles also stated that she has been the member/manager of a real estate property management company for approximately fifteen years, and is familiar with property insurance principles, as well as repair and rebuild issues as they relate to commercial real estate properties.

Ms. Quarles has a particular advantage which the other umpire candidates lack. Ms. Quarles was actually inside the Webster County Courthouse on numerous occasions before it burned, and has personal knowledge of its construction and finishes prior to the fire. Appraisal panel members (unlike judges) are required to perform their own investigations of the facts, rely on personal knowledge, and form their own opinions. See *Kuehn v. State Farm Fire and Cas. Co.*, 1:08cv577 (Aug. 17, 2009). Ms. Quarles' knowledge of the pre-fire condition of the courthouse will uniquely benefit the panel's investigation. It is likely that Ms. Quarles has valuable knowledge which will aid the panel in performing their task of determining the cost of repairing/rebuilding/replacing the insured building.

Ms. Quarles also has the distinct advantage of proximity to Webster County, as she resides in nearby Starkville, Mississippi, and is readily available to inspect the property, meet with the other appraisers, and/or meet with experts. This is important for convenience of scheduling, and also because umpires typically charge (as much as $350/hour) for travel time,

3

which can add up.  The parties each pay one-half of the umpire's fees, so the expense issue is significant.

Finally, Ms. Quarles has no connection or relationship with, or knowledge of any of the parties, their representatives, their attorneys, or the appraisers each of the parties appointed.  Ms. Quarles stated that she has never met any of them.  Ms. Quarles' impartiality is unquestioned.

      (b) <u>Atlantic Specialty's Objections to Ms. Quarles</u>:

Atlantic Specialty objects to Ms. Quarles on the basis of her lack of qualifications and experience to serve as an umpire in this matter.  Based upon Atlantic Specialty's counsel's research and telephonic interview of Ms. Quarles, she has no significant experience in construction or insurance disputes or litigation, nor does she have any insurance appraisal experience.  It is Atlantic Specialty's understanding that Ms. Quarles has no experience with the valuation issues that will be presented to and determined by the appraisal panel in this matter.  In fact, Ms. Quarles disclosed to Atlantic Specialty's counsel that her only knowledge as to the issues to be addressed in the appraisal process was based upon two cases recently provided to her by counsel for Webster County.  It is Atlantic Specialty's position that Ms. Quarles lacks the necessary background, experience, and qualifications to serve as an umpire in this matter for purposes of the competency requirement in Paragraph 7(c) of the Appraisal Agreement.

Atlantic Specialty also objects to Ms. Quarles based upon her statements to Atlantic Specialty's counsel concerning her position at the Stennis Institute and representation of the interests of various political and governmental entities in Mississippi, including various counties.  Atlantic Specialty is concerned that Ms. Quarles' work on behalf of counties in Mississippi gives rise to an impression of possible bias in favor of local governmental entities or counties.

4

(c) <u>Webster County's Response to Atlantic Specialty's Objections to Ms. Quarles</u>:

<u>Response to Atlantic Specialty's Objections to Ms. Quarles' competence</u>.

Atlantic Specialty's primary objection to Ms. Quarles is that she has no "significant" experience in "construction, insurance disputes or litigation."  That is not necessarily true. Regardless, it is irrelevant to this inquiry.

It is completely irrelevant as to whether any of four candidates have litigation experience. The umpire will not participate at all in the litigation which, in fact, has been stayed for the duration of the appraisal.  If subsequent litigation ensues regarding the appraisal, the umpire will only be a fact witness.

Construction experience might be helpful to the umpire, but is not mandatory.  That is underscored by the fact that only one of the three candidates --- John Minor --- actually has real-world construction experience. Neither of the two candidates Atlantic Specialty proposed has construction experience.  While David Mockbee practices construction law, construction law is not the same thing as construction experience.  Mark Davidson also has no construction experience.

Conversely, the two appraisers appointed by the parties, Jon Held and Herman Johnson, are both construction experts with real-world construction experience.  The two appraisers are likely to retain other construction experts, such as architects and engineers, regarding complex issues. Similarly, the umpire may retain her own experts if needed.   To the extent that the umpire needs to understand some construction issue relating to the appraisal, there will be plenty of experts available to explain it.  It is not necessary that the umpire be a construction expert, as illustrated by the fact that three of the four candidates have no construction experience.

Further, Ms. Quarles did state that, through her decade of experience in managing commercial real estate, she does have knowledge of basic property repair and damage valuation, which is the issue in this appraisal. Ms. Quarles likely has more "construction experience" than either of the two candidates proposed by Atlantic Specialty --- David Mockbee and Mark Davidson.

Atlantic Specialty also objects that Ms. Quarles has no "significant experience" in "insurance disputes." Presumably, Atlantic Specialty means that to say Ms. Quarles does not have significant experience in insurance claim appraisals. However, Atlantic Specialty fails to mention the fact that three of the four candidates do not have significant appraisal experience in Mississippi insurance claim appraisals. David Mockbee has only served as umpire in one small residential appraisal more than ten years ago. That does not qualify as "significant experience." Mark Davidson has significant appraisal experience, but it is all in Texas, which may be more of a detriment than a plus, since Mississippi appraisal law differs radically from that of Texas. John Minor, who has served in more than 900 appraisals, many of them in Mississippi, is the only candidate with significant and relevant appraisal experience.

ADR training and experience is probably the best qualification for an umpire, as reflected by the fact that three of the four candidates (and both candidates proposed by Atlantic Specialty) are mediators/arbitrators. The informal appraisal process requires the three appraisal panel members to work together as a team to come to conclusions regarding fact issues. Appraisal is an extra-judicial process for resolving an issue of fact. ADR training and experience, is more than enough qualification for the umpire.

As indicated by her resume, Ms. Quarles has been recognized by the Mississippi Supreme Court as a civil trial mediator, and qualified by the United States District Court for the

Northern and Southern Districts of Mississippi as a mediator. She has completed in excess of 40 hours of mediator training. Ms. Quarles has taught over a dozen seminars on the topic of ADR for the University of Mississippi. She is recognized by NASD as mediator/arbitrator.

Further, it is necessary to keep in mind that, if the parties had not elected to have the amount of loss decided through appraisal, then the fact issue of the amount of loss would have been determined by a jury. Ms. Quarles is at least as competent as the average jury to determine the amount of loss in an insurance claim.

Ms. Quarles does have one unique qualification that the other candidates lack. She has actually been in the Webster County Courthouse prior to the fire. She has personal knowledge of the condition of the courthouse, how it was constructed, and how it was finished inside. That knowledge will be invaluable to the two other members of the appraisal panel, and cannot be duplicated. This knowledge makes her unique qualified to be the umpire.

<u>Response to Atlantic Specialty's Objections to Ms. Quarles' impartiality.</u>

Atlantic Specialty suggests vaguely that Ms. Quarles' history of service in Mississippi state agencies may cause her to be biased in favor of Webster County. That makes no sense whatsoever. Ms. Quarles has worked for the state, and for the city of Starkville. She has taught at two Mississippi universities (state agencies). She has also had, and continues to have, an active private practice of law. Ms. Quarles does not live in Webster County; has never been employed by Webster County; does not represent Webster County; and has no affiliation with Webster County. Ms. Quarles does not know the parties to this dispute, or their lawyers, or their two appointed appraisers. There is no rational basis for Atlantic Specialty's suggestion that Ms. Quarles is biased in favor of Webster County.

826448

**Webster County Umpire Nominee John Minor** (See <u>Ex. C</u>: CV)

   (a) <u>Webster County's Statement as to Mr. Minor's Qualifications</u>:

John Minor is a licensed general contractor who has served as an appraiser or an umpire in more than 800 property insurance appraisals, hundreds of which took place in Mississippi. Mr. Minor is aware of the specific law and principles which govern appraisals in Mississippi. Mr. Minor has served as an umpire in more than 150 appraisals, either by agreement of the appraisers, or appointed by courts. Both state and federal courts have appointed Mr. Minor as the umpire for appraisals, including the Circuit Court of Hancock County, Mississippi.

Mr. Minor is the only one of the four proposed umpire candidates who is a WIND Network Certified Umpire. The WIND Network is a non-profit organization sponsored by the insurance industry to promulgate standards and training for insurance professionals. The Certified Umpire designation signifies that Mr. Minor has complete formal training regarding the appraisal process, and adheres to the written WIND Network code of ethics for appraisals.

Mr. Minor has a particular advantage which the other umpires candidates lack. Mr. Minor has previous, real-world experience in restoring/rebuilding historical buildings, and so is familiar with the materials and the techniques which will be necessary to "repair, rebuild or replace" the Webster County courthouse, as required by the insurance policy and the parties' separate Agreement. Mr. Minor is familiar with the sources for uncommon historical building components, as well as the reasonable prices for such components. Mr. Minor's experience will significantly aid the appraisal panel in determining the amount of loss to the 100-year-old Webster County Courthouse.

Mr. Minor is located in Pensacola, Florida, which is just a five-hour drive from Walthall, Mississippi, where the Webster County Courthouse is located. One of the appointed appraisers

826448

(Herman Johnson) resides in Bay St. Louis, Mississippi, which is approximately the same distance from Walthall, and only a two-hour drive from Pensacola. If Mr. Minor was the umpire, it would be a convenient matter for the appraisal panel to schedule some of their meetings on the Mississippi Gulf Coast or in Pensacola, thus reducing scheduling conflicts and expense.

      (b) <u>Atlantic Specialty's Objections to Mr. Minor</u>:

Atlantic Specialty objects to Mr. Minor on the basis of his working relationship with counsel for Webster County, Tina Nicholson, as well as with Webster County's Public Adjuster, Scott Favre. Based upon Atlantic Specialty's counsel's research and telephonic interview of Mr. Minor, it is Atlantic Specialty's understanding that Ms. Nicholson has appointed Mr. Minor as an appraiser on behalf of policyholders on at least 3-4 prior occasions, and has further retained Mr. Minor as an expert witness on behalf of policyholders on at least 3-4 other occasions—the most recent of which Atlantic Specialty was aware was in 2013. In addition, it is Atlantic Specialty's understanding that Mr. Minor has acted as a consultant for Mr. Favre in at least one prior appraisal involving a loss to a jet in which Mr. Favre was the policyholder's appraiser.

It is Atlantic Specialty's position that the significant connections between Mr. Minor, Ms. Nicholson, and Mr. Favre cast justifiable doubt on Mr. Minor's ability to be fair and impartial as an umpire in this matter as required by Paragraph 7(c) of the Appraisal Agreement. At a minimum, these connections give rise to an impression of possible bias. *See In re The Travelers Indem. Co.*, No. Civ. 3:04 MC 196, 2004 WL 2297860, at *4 (D. Conn. Oct. 8, 2004) (holding that umpire candidate's prior employment as an expert witness on behalf of party and its counsel "gives rise to an impression of possible bias" such that the court would pass on his appointment as an umpire); *see also Continental Casualty Co. v. QBE Ins.*, 2003 WL 22295377, at *1 (N.D. Ill. October 7, 2003) (considering petition to appoint umpire and selecting individual with "no

previous history or connection to either party or the law firms representing them"); *Wheeler v. St. Joseph Hosp.*, 133 Cal. Rprt. 775, 793 (Cal. App. 1976) ("the nature of the relationship between [a] member of the arbitration panel and the law firm representing one of the principal defendants manifestly [gives] rise to an impression of possible bias").

(c) Webster County's Response to Atlantic Specialty's Objections to Mr. Minor:

As a starting point, it is important to note that Atlantic Specialty does not attempt to assert that John Minor is not qualified to be an umpire. Of the four candidates, Mr. Minor is the only one who has extensive, real-world construction experience. Mr. Minor is also the only candidate who has served as an umpire or appraiser in approximately 900 insurance claim appraisals, including many in Mississippi. Mr. Minor is unquestionably the most qualified candidate in terms of competence and experience.

Atlantic Specialty's only objection to Mr. Minor is that he has a past connection to Webster County's lawyers. However, Atlantic Specialty Atlantic Specialty has exaggerated and misstated the connection. Further, Mr. Minor has a much more extensive relationship with Atlantic Specialty. Finally, Atlantic Specialty has misstated the law.

Atlantic Specialty incorrectly stated the facts. To begin with, Webster County's counsel, Tina Nicholson, has never appointed Mr. Minor as an appraiser. Two of Nicholson's clients happened to appoint Mr. Minor as appraiser --- once in approximately 2009, and once in approximately 2012. In the second claim, the case settled before the appraisal occurred. Accordingly, of the 900 or so appraisals in which Mr. Minor has served, one of them just happened to involve one of Webster County's counsel's clients from three years ago. That connection is too tenuous to support a claim of bias.

Nicholson has retained Minor only twice as an expert witness in an insurance claim case. The first time was in approximately 2008, and the second time was in approximately 2010, during a period when Nicholson practiced with a law firm that often retained Mr. Minor for its cases. Atlantic Specialty may have become confused by Mr. Minor's work for clients of other lawyers at that law firm. That law firm often retained Mr. Minor as an expert, and continues to retain Mr. Minor as an expert, but has no connection to Nicholson or her current law firm. In the last two years that Nicholson has practiced law at her current law firm, neither she nor other lawyers at the firm have retained Mr. Minor as an expert. Mr. Minor's relationship is with the other law firm, not with Nicholson or her current law firm.

The fact that Webster County's counsel's previous law firm retains Mr. Minor as an expert does not really support Atlantic Specialty's claim that he would be biased in favor of Nicholson or her current firm. In fact, it would suggest the opposite --- that Mr. Minor does not have any ongoing relationship, or expectation of one, with Webster County's counsel.

Likewise, Mr. Minor's connection with Mr. Favre is exaggerated. Approximately 4 years ago, Scott Favre, Webster County's public adjuster, hired Mr. Minor to assist him as an appraisal consultant --- for one day. The appraisal happened to take place in Pensacola, where Mr. Minor resides. This fact does not support Atlantic Specialty's suggestion that Mr. Minor would be biased in favor of Mr. Favre at the present time. That relationship is not ongoing.

Mr. Minor's relationship with Atlantic Specialty is more extensive, and is ongoing. One Beacon, the parent company of Atlantic Specialty, has an ongoing business relationship with John Minor. He has worked as a consultant on more than two dozen insurance claims for One Beacon in the past three years, assisting with the adjustment of claims with One Beacon's adjusters. Mr. Minor's construction company is a preferred vendor for One Beacon, and has

11

worked on One Beacon's insurance claims. If Mr. Minor is has a lucrative, ongoing relationship which could give rise to bias, it is with One Beacon/Atlantic Specialty.

The fact that Mr. Minor has some previous, brief associations with Webster County's counsel and public adjuster is simply a function of his deep, wide and long experience in the insurance claim business. Mr. Minor has actually participated in several appraisals involving people employed by Atlantic Specialty's appointed appraiser, Jon Held. In each of those appraisals, Mr. Minor and Mr. Held's employee were able to agree on the amount of loss without even having to engage an umpire. That positive experience would arguably cause Mr. Minor to be biased in favor of Mr. Held. Mr. Minor has never met Webster County's appointed appraiser, Herman Johnson.

Mr. Minor is also a WIND Network Certified Umpire, which means that he has agreed to adhere to a code of conduct for umpires. That code requires umpires to be impartial:

> After accepting an appointment and while serving as an Umpire, a person should avoid entering into any business, professional, or personal relationship, or acquiring any financial or personal interest, which is likely to affect impartiality or which might reasonably create the appearance of partiality. For a reason able period of time after the decision of a case, persons who have served as Umpires should avoid entering into any such relationship, or acquiring any such interest, in circumstances which might reasonably create the appearance that they had been influenced in the appraisal by the anticipation or expectation of the relationship or interest. . . . Umpires should conduct themselves in a way that is fair to all parties and should not be swayed by outside pressure, public clamor, and fear of criticism or self-interest. They should avoid conduct and statements that give the appearance of partiality toward or against any party.

http://windnetwork.com/wind-certified-umpire-program/wind-umpire-code-of-ethics/. Further, Mr. Minor's professional conduct in appraisals was memorialized in a decision of the United States District Court for Southern Mississippi. *Kuehn v. State Farm Fire and Cas. Co.*, 1:08cv577-LTS-RHW (2009). In *Kuehn*, the court noted that Mr. Minor had been trained as an appraiser by State Farm's attorney, Jack Land, and appointed by State Farm as its appraiser on numerous Hurricane Katrina claims. Accordingly, Mr. Minor had an ongoing business

relationship with State Farm. In the Kuehn appraisal, State Farm's counsel attempted to influence Mr. Minor to conduct the appraisal in an improper fashion. State Farm's request violated Mr. Minor's ethics. The undisputed evidence reflected that Mr. Minor asked State Farm to allow him to withdraw. When State Farm refused, Mr. Minor ignored State Farm's improper instructions and conducted the appraisal as per his usual methods. As a result, the court upheld the appraisal award.

Further, Atlantic Specialty also misstated the law by citing two isolated and irrelevant New England cases. Courts in this Circuit have held that the mere existence of a pre-existing business relationship is not evidence of bias:

> The insured in Terry argued that the insurance company's appraiser was not impartial because the company had selected him as its appraiser "many times before" and he "had consistently served with partiality and bias in making awards of amount of damage". . . . Even if true, this fact alone would not necessarily or probably be inconsistent with his impartiality in the present case, in the absence of some act or conduct tending to exhibit his serving the company's interest as a partisan would.

*Gardner v. State Farm Lloyds*, 76 S.W.3d 140 (Tex.App. 2002). The mere fact that Mr. Minor has previously worked with Webster County's counsel in another case, without more, is not evidence of bias.

Mr. Minor is clearly the most qualified candidate for umpire in terms of his experience and his skill set. Atlantic Specialty's objections to him on the basis of bias are unfounded. There is no valid reason to believe that Mr. Minor will be anything but truly impartial in this appraisal.

6.     Pursuant to Paragraph 7(c) of the Appraisal Agreement, Atlantic Specialty submits the following two candidates for umpire, together with a brief statement as to the reasons Atlantic Specialty believes the candidates meet the "competent and "impartial" standard required

826448

to serve as an umpire in this matter. Webster County's objections to the candidates are also set forth below.

**Atlantic Specialty Umpire Nominee Judge Mark Davidson** (See <u>Ex. D</u>: CV)

(a) <u>Atlantic Specialty's Statement as to Judge Davidson's Qualifications</u>:

Judge Mark Davidson has been on the bench in the State of Texas for approximately 28 years. He is currently the presiding MDL Judge for asbestos cases in the State of Texas, prior to which he served as a district judge for the 11th District in Texas for 20 years. Judge Davidson has served as an umpire in approximately 50 insurance appraisals—approximately 9 of which involved commercial property losses and another 7 of which involved losses at apartment complexes. In three of these appraisals, Atlantic Specialty's appointed appraiser Jonathan Held was one of the appraisers appointed by the parties, but Mr. Held did not nominate Judge Davidson as the umpire in any of these three appraisals—Judge Davidson was either agreed-to by the parties themselves or appointed by the court.

It is Atlantic Specialty's position that Judge Davidson meets the "competent and impartial" requirements of Paragraph 7(c) of the Appraisal Agreement. Judge Davidson has extensive experience as an insurance appraisal umpire. He has presided over hundreds of litigated cases and is more than capable of sorting out the issues that will be presented in an appraisal in Mississippi. Further, he is particularly suited to serving in an "impartial" manner, having been a sitting judge for the past 28 years. Judge Davidson has no pecuniary interest in the outcome of the appraisal or this litigation and has advised counsel for Atlantic Specialty that he has no conflicts that would prevent him from serving as an umpire in this matter. Judge Davidson has advised that he has availability to begin work on this matter.

(b) <u>Webster County's Objections to Judge Davidson</u>:

Webster County has three objections to Mark Davidson. First, Mr. Davidson has very limited insurance appraisal experience, and none at all with an appraisal conducted under Mississippi law. Second, almost all of Mr. Davidson's appraisal experience was with Mr. Held, Atlantic Specialty's appointed appraiser, and Mr. Held is the person who proposed him. Third, Mr. Davidson's schedule, and his distance from Mississippi, mean that an appraisal with him as umpire will be long and expensive.

Mark Davidson is a judge/mediator/arbitrator with extremely limited umpire experience in the state of Texas, where the law regarding appraisal is radically different from that in Mississippi.[1] While Webster County acknowledges that an accomplished mediator/arbitrator (such as Lydia Quarles) can be an effective umpire without previous appraisal experience, Atlantic Specialty has claimed that Lydia Quarles is not qualified due to lack of specific experience as an umpire in insurance claim appraisals. To the extent that the Court considers previous appraisal experience desirable for an umpire, it should be noted that not only is Mr. Davidson's experience in appraisals very limited, it all involves appraisals conducted in another state under very different law and principles. Mr. Davidson has never been involved in an appraisal in Mississippi and so has no idea how it differs from Texas appraisals. Mr. Davidson is not licensed to practice law in Mississippi and so is not authorized to interpret and apply Mississippi law like a Mississippi lawyer. The other candidates are either experienced in Mississippi appraisals (Minor) or are Mississippi lawyers who can interpret the law regarding appraisal.

---

[1] In Texas, the appraisal panel may determine, to a great extent, the cause of the loss. See *State Farm Lloyds v. Johnson*, 290 S.W.3d 897 (Tex. 2009). In Mississippi, the law precludes the appraisers from determining any issues of causation, and the most common reason in Mississippi for challenging an appraisal award is that the appraisers improperly decided an issue of causation. *National Fire Ins. of Hartford v. Munn*, 115 So.2d 54 (Miss. 1959); see also *Kuehn v. State Farm Fire and Cas. Co*., 1:08cv577 (Aug. 17, 2009)(citing *Munn*).

826448

If Mr. Davidson is appoint as umpire, someone must instruct him in the ways in which Mississippi appraisal law differs from his usual methods in Texas, and that begs the question of who will instruct Mr. Davidson in the law in this matter. An umpire who does not follow the proper law regarding appraisal only jeopardizes the process, and gives rise to further litigation. See, *i.e., Motion to Disqualify Umpire and Appoint New Umpire*, Doc. 148, 3:13cv878-DCB-MTP (S.D. Miss. 2013)(umpire refuses and fails to follow principles established by *Munn*). Webster Count objects to Mr. Davidson on the basis that he has learned how to conduct appraisals under the differing law of another state, and it is uncertain as to whom will instruct him how to proceed under Mississippi law.

Webster County's second objection to Mr. Davidson is that he has a prior relationship with Jon Held, Atlantic Specialty's appointed appraiser. Mr. Davidson has been involved in at least three appraisals where he was the umpire and Mr. Held was an appraiser, and Mr. Davidson aligned his decision with Mr. Held's in each instance. Mr. Davidson has no such relationship with Webster County's appointed appraiser, Mr. Johnson. While it is not suggested that Mr. Davidson would consciously favor Mr. Held, and there is no reason to believe that Mr. Davidson would not strive to be objective, it would be natural for Mr. Davidson to give greater weight to Mr. Held's opinions since Mr. Davidson has agreed with him in the past. By contrast, Mr. Davidson has no such history with Mr. Johnson. Webster County objects to Mr. Davidson based on his prior relationship with Mr. Held.

Finally, Webster County objects to Mr. Davidson based on his distance from Walthall, Mississippi, and the problems posed by his workload. Mr. Davidson resides in Houston, Texas, which is a nine hour drive (more if he stops even once) to Walthall, Mississippi. Each trip Mr. Davidson would make to Mississippi would require three days of his time. Since the umpire is

16

paid by the hour (and Mr. Davidson's hourly rate is high), usually including travel time, Mr. Davidson's services would be extremely expensive for the parties. Even if Mr. Davidson flew to Memphis, rented a car, and drove to Walthall, it would likely still consume two to three days of his time, and the parties would have to bear all of those expenses --- airfare, rental car, meals, and hotel.

More importantly, Mr. Davidson's workload effectively precludes him from serving as the umpire in this claim. As stated in his resume, Mr. Davidson is the Multi-District Litigation Judge for over 85,000 asbestos cases pending throughout Texas. Mr. Davidson also maintains an active mediation/arbitration practice in Houston, Texas. When Webster County's counsel contacted his office on January 22, 2015, she was informed that Mr. Davidson's calendar was completely booked through March 2015, and it would be April before Mr. Davidson would be available to travel to Mississippi to work on this appraisal. This is consistent with the experience of Webster County's counsel, who represented a party in a case in which Mr. Davison was the umpire. The appraisal in that case was unnecessarily prolonged by several months because of the appraisers' difficulty in scheduling meetings with Mr. Davidson --- and that was an appraisal held in Mr. Davidson's hometown of Houston. Webster County objects to Mr. Davidson on the basis that he is located too far away, and is too busy to be an effective umpire for this appraisal.

(c) <u>Atlantic Specialty's Response to Webster County's Objections to Judge Davidson</u>:

Webster County's objections to Judge Mark Davidson acting as the umpire are factually inaccurate and without merit. It is Atlantic Specialty's counsel's understanding that Webster County's counsel did not interview or otherwise communicate with Judge Davidson directly regarding his qualifications or availability to serve as a competent and impartial umpire in this matter. Had counsel for Webster County communicated with Judge Davidson directly regarding

826448

these issues, she would have learned that most, if not all of what is stated in Webster County's objections to Judge Davidson is misplaced.

Webster County asserts that Judge Davidson has only "very limited" insurance appraisal experience. Judge Davidson has been the umpire in approximately 50 insurance appraisals, including commercial, multi-family, and residential property losses. He confirmed this to Atlantic Specialty's counsel in their initial telephonic interview of Judge Davidson and again in an email on January 26, 2015. *See* Ex. E – Email from Judge Davidson. Service as umpire in approximately 50 insurance appraisals is undoubtedly more than "very limited" experience in insurance appraisals. It is significant experience that more than qualifies Judge Davidson to serve as the umpire in this matter.

Webster County further questions Judge Davidson's experience with appraisals outside of the State of Texas and his ability to interpret and apply the law of Mississippi regarding appraisals. Webster County alleges that because Judge Davidson is not licensed to practice law in Mississippi, he is "not authorized to interpret and apply Mississippi law like a Mississippi lawyer." This objection is borderline frivolous, particularly where Webster County is asking this Court to appoint John Minor, who is not a lawyer, as the umpire. Judge Davidson is a sitting Multi-District Litigation ("MDL") Judge. In his capacity as an MDL Judge, he is routinely called upon to interpret and apply the laws of other states. Judge Davidson has advised that he has done so monthly for at least the past 10 years. *See* Ex. E. On at least three prior occasions, Judge Davidson has been called upon to interpret and apply Mississippi law. He is more than capable of determining Mississippi law on appraisals, and acting in conformity therewith as an umpire.

The fact that Judge Davidson has not previously acted as an umpire in a Mississippi appraisal does not establish that he is incapable of determining Mississippi law on appraisals on his own—just as he does routinely in the MDL cases over which he presides. It certainly does not threaten to "jeopardize" the appraisal process as Webster County suggests.[2]

Webster County's next objection to Judge Davidson is that "almost all" of his appraisal experience has been in cases where Atlantic Specialty's appointed appraiser, Jon Held, was involved. Webster County alleges that in each of these appraisals, Mr. Held "was the person who proposed" Judge Davidson as umpire and that Judge Davidson "aligned his decision with Mr. Held's in each instance." Again, had counsel for Webster County interviewed Judge Davidson, she would have learned these assertions are not correct. Judge Davidson has been an umpire in approximately 50 insurance appraisals. Only three have involved Jon Held. In two of those cases, Judge Davidson was appointed by the court and was neither nominated, nor suggested by Mr. Held. *See* Ex. E. It is Atlantic Specialty's understanding that Mr. Held did not nominate Judge Davidson in the third appraisal either—he was agreed-to by the parties.

Further, in the three appraisals in which Judge Davidson was the umpire and Mr. Held was one of the party-appointed appraisers, Judge Davidson did not "align his decision with Mr. Held's in each instance," as Webster County suggests. *See* Ex. E. Rather, Judge Davidson "used [his] independent judgment and developed [his] opinions without regard to which appraiser suggested any particular figure." *See id*. This resulted in Judge Davidson's opinion of damages

---

[2] Webster County points to a Motion to Disqualify Umpire filed in a matter styled *M Street Investments, Inc. v. Zurich American Insurance Company, et al.*, a case out of the Southern District of Mississippi (Case No. 3:13-cv-00878-DCB-MTP). Notably, the Motion to Disqualify Umpire was filed by Ms. Nicholson, counsel for Webster County in this litigation. In the *M Street Investments* case, Ms. Nicholson (who represented the insured) sought to have John Minor appointed as the umpire by the Court. The Court did not accept Mr. Minor, but ultimately appointed an umpire that had not been nominated by any of the parties. Interestingly, were this Court to review the court file in the *M Street Investments* case, it would note that Ms. Nicholson also sought to have the insurer's appraiser disqualified and have the Court appoint Mr. Minor as the insurer's appraiser—after the Court had already rejected Mr. Minor as the umpire nominated by Ms. Nicholson.

being closer to Mr. Held's opinion in one case, and his opinion of damages being closer to that of the insured's appraiser in another. This in no way demonstrates that Judge Davidson has any bias towards Mr. Held or would otherwise side with Mr. Held. By analogy, this situation does not differ from a trial judge having previously presided over three cases tried by the same lawyer. That the lawyer has been before the court on previous matters does not mean that the judge must recuse herself from future matters involving that lawyer. Umpires, like judges, are neutrals. There is no evidence to suggest Judge Davidson would act in any other capacity. Webster County is misplaced in arguing otherwise.

Webster County's final objection is to Judge Davidson's distance from Walthall, Mississippi, and the "problems posed by his workload." Regarding Judge Davidson's "distance" from Walthall, Webster County alleges that his rate, at $350 per hour, is "extremely high" and the parties would be required to pay for his travel to Walthall from Houston, TX, his hotel rooms, rental cars, and meals while in Walthall[3]. While this objection does not go to Judge Davidson's competency or impartiality, the same could be said for the travel expenses of Webster County's umpire candidate John Minor, who will have to travel to Walthall from Pensacola, FL (a drive of at least 5 hours), stay at a hotel and eat meals. There are direct flights to Memphis from Houston daily, and the total travel time of those flights is approximately 1 ½ hours. Regardless, the reality is that the umpire selected by this Court should not have to travel to Walthall more than one or two times at most over the course of this appraisal—and the expenses associated with the umpire will be split evenly by the parties. Judge Davidson's rate is reasonable for a sitting judge with 28 years of experience.

---

[3] By comparison, the rate of Webster County umpire nominee John Minor is $250 per hour. Given the reasonably anticipated amount of work by the umpire in this matter and the amount of Webster County's building claim, Atlantic Specialty submits that the overall cost difference to each of the parties would likely not be significant.

Even though Webster County's objection that Judge Davidson's "workload" will cause problems with him serving as an umpire has nothing to do with his competency or impartiality, it reflects a misunderstanding of Judge Davidson's workload. Had counsel for Webster County communicated directly with Judge Davidson, she would have a better understanding of his schedule. Judge Davidson has advised that, while his schedule for February and early March is full at this time, several days a week are dedicated to the pretrial of asbestos cases—a substantial percentage of which typically settle. It is Atlantic Specialty's counsel's understanding based upon their telephone interview of Judge Davidson that he would have availability in February and March to perform his duties as umpire if appointed by this Court.

It is Atlantic Specialty's position that Judge Davidson is a well-qualified candidate for umpire. He is both competent and impartial, and the parties would be well-served to have Judge Davidson serve as umpire in the appraisal.

**Atlantic Specialty Umpire Nominee David Mockbee** (See Ex. F: CV)

(a) Atlantic Specialty's Statement as to Mr. Mockbee's Qualifications:

David Mockbee is president of Mockbee Hall & Drake, P.A. Mr. Mockbee is a well-respected lawyer in the State of Mississippi whose practice has focused on construction law and government contracts for many years. Mr. Mockbee is a Fellow in the American College of Construction Lawyers, American College of Trial Lawyers, Litigation Counsel of America and the Mississippi Bar Foundation. In addition, Mr. Mockbee is the author of the Mississippi Construction Law treatise.

It is Atlantic Specialty's position that Mr. Mockbee meets the "competent and impartial" requirements of Paragraph 7(c) of the Appraisal Agreement. Mr. Mockbee's extensive construction law experience makes him particularly suited to serve as an umpire in this matter

826448

and to understand the valuation issues that will be determined. Mr. Mockbee is also impartial and has no conflicts that would preclude him from serving as an umpire in this matter. Mr. Mockbee has no pecuniary interest in the outcome of the appraisal or this litigation.

(b) Webster County's Objections to Mr. Mockbee:

Webster County has three objections to David Mockbee. First, Mr. Mockbee has no pertinent appraisal experience. Second, Mr. Mockbee has a prior relationship with Atlantic Specialty's counsel. Third, Mr. Mockbee has an irreconcilable conflict which precludes him from serving as umpire.

David Mockbee is a Mississippi lawyer/mediator/arbitrator with extremely limited umpire experience. In fact, Mr. Mockbee stated that he has only been an umpire one time, on a small residential insurance claim over ten years ago. While Webster County acknowledges that an accomplished mediator/arbitrator can be an effective umpire without previous appraisal experience, Atlantic Specialty has claimed that Lydia Quarles is not qualified due to lack of specific experience as an umpire in insurance claim appraisals. To the extent that the Court considers previous appraisal experience desirable for an umpire, it should be noted that Mr. Mockbee has hardly any experience to speak of, and no experience whatsoever regarding appraisals of a commercial insurance claim.

Mr. Mockbee also has a prior relationship with Atlantic Specialty's counsel. Mr. Mockbee states that he knows Atlantic Specialty's lawyers "very well." While Webster County has no reason to doubt the professional integrity of Mr. Mockbee, or his ability to be objective as an umpire, Atlantic Specialty has objected to John Minor on the basis that he has a prior relationship with Webster County's lawyers. To the extent that the Court considers such prior

relationships a factor in its analysis, it should also consider Mr. Mockbee's prior relationship with Atlantic Specialty's counsel.

Finally, Webster County objects to Mr. Mockbee on the basis that he has identified a probable conflict which precludes him being the umpire in this case. Mr. Mockbee represents Belinda Stewart, an architect who is also the mayor of Walthall, Mississippi, where the Webster County Courthouse was located. Webster County has identified Ms. Stewart as a non-testifying expert witness in the litigation before this Court, and has asserted the work product privilege as to certain documents created by her.

Mr. Mockbee states that he has had numerous conversations with his client, Ms. Stewart, regarding issues pertaining to the Webster County Courthouse. Mr. Mockbee asserted the attorney-client privilege on Ms. Stewart's behalf, and would not disclose the specifics of those conversations, but he stated that he would likely have a conflict under the Rules of Professional Conduct if he, as a member of the appraisal panel, was required to determine whether the courthouse should be repaired, rebuilt, or replaced.

Since the insurance policy and the parties' Agreement specifically require the appraisal panel to determine the amount it would cost to "repair, rebuild or replace" the Webster County Courthouse, it is virtually certain that Mr. Mockbee would develop an irreconcilable conflict during the appraisal, and be forced to withdraw as umpire. That would necessitate the parties returning to the Court for the appointment, and starting the appraisal over again. Mr. Mockbee himself stated that he anticipates a conflict, would prefer not to be appointed under these circumstances, and might not serve if appointed.

Further, Mr. Mockbee is likely in possession of information from Ms. Stewart which is not available to Atlantic Specialty in this litigation, and which could not properly be used to

826448

determine the amount of loss. If Mr. Mockbee is allowed to disseminate this information to the appraisal panel or otherwise, it would be an improper circumvention of the work product doctrine. Even if Mr. Mockbee does not disseminate the information, his knowledge of the privileged information would improperly color his opinions in the appraisal as to the amount of loss.

If Mr. Mockbee decided he did not have a conflict, was appointed as umpire, and agreed to serve, then Webster County would be forced to file some sort of motion to protect from disclosure Ms. Stewart's work product, and to preclude any statements she has made to Mr. Mockbee from being disclosed to the other appraisers. This would result in unnecessary and complicated litigation. The whole point of appraisal is to avoid litigation. Webster County objects to Mr. Mockbee on the bases that he has a conflict under the Rules of Professional Conduct; is privy to privileged information which should not be utilized or disclosed; and that his appointment would result in unnecessary litigation and delay.

(c) <u>Atlantic Specialty's Response to Webster County's Objections to Mr. Mockbee</u>:

Webster County's objections to Mr. Mockbee serving as umpire are without merit and should be rejected by this Court. Mr. Mockbee is qualified to act as a competent and impartial umpire in this matter, and Webster County has not demonstrated otherwise.

Webster County first objects to Mr. Mockbee on the basis that he has no pertinent appraisal experience. This is an interesting objection, given that Webster County's nominee Lydia Quarles has no experience as an appraiser or umpire, nor does she have any significant experience with insurance or construction litigation. As Atlantic Specialty noted above with respect to Mr. Mockbee's qualifications, he is an accomplished construction lawyer and is the author of the Mississippi Construction Law treatise. He is a Fellow in the American College of

24

Construction Lawyers, as well as other professional organizations. Further, he has served as an umpire previously in an insurance appraisal. Without a doubt, Mr. Mockbee is competent to serve as an umpire in this matter and will be able to ascertain and understand the valuation issues that will arise in the appraisal process.

Webster County's second objection to Mr. Mockbee is that he has a "prior relationship with Atlantic Specialty's counsel" and knows them "very well." This objection is misplaced. While Atlantic Specialty's counsel knows of Mr. Mockbee from a professional standpoint and he may know of Atlantic Specialty's counsel from a professional standpoint, Atlantic Specialty's counsel has no prior or ongoing working relationship with Mr. Mockbee in terms of working with him on the same side of a matter or case. In fact, the only prior working relationship between Mr. Mockbee and the undersigned counsel for Atlantic Specialty has been when Mr. Mockbee and/or his firm were opposing counsel.

Webster County's final objection to Mr. Mockbee is that he has allegedly identified a probable conflict of interest due to his representation of Belinda Stewart in her capacity as an architect (who is also the Mayor of Walthall, Mississippi). As with Webster County's other objections to Mr. Mockbee, this position is misguided.

Atlantic Specialty's counsel's January 15, 2015 correspondence to Webster County's counsel nominating Atlantic Specialty's two umpire candidates discloses that Mr. Mockbee advised Atlantic Specialty's counsel that he represents Belinda Stewart in her capacity as an architect, but he does not view his representation of Ms. Stewart as a conflict or an impediment to his ability to serve as a fair and impartial umpire in this matter.

Webster County's counsel has attempted to create the impression of a probable conflict where none exists for purposes of the appraisal in this matter. Webster County's objections to

Mr. Mockbee state that he has had numerous conversations with Ms. Stewart regarding issues pertaining to the Webster County Courthouse and that if he, as an umpire, had to determine whether the Courthouse should be repaired, rebuilt, or replaced, he would likely have a conflict. It is Atlantic Specialty's counsel's understanding from speaking with Mr. Mockbee, however, that Webster County's counsel advised him that Webster County is withholding a report allegedly authored or generated by Ms. Stewart on July 24, 2013 in this litigation on the alleged basis of work product. It is Atlantic Specialty's understanding that the concern Mr. Mockbee expressed is that if the discoverability/production of the report by Ms. Stewart becomes an issue in the appraisal, he believes he would have a conflict.

The identified report by Ms. Stewart, however, is not at issue in the appraisal of this matter. Although Webster County identified a July 24, 2013 report by Ms. Stewart on its privilege log in this litigation, Atlantic Specialty has not specifically asked for the report and is not seeking the report in the appraisal in this matter. Any report authored or generated by Ms. Stewart in her capacity as an architect (or even as the Mayor of Walthall) would have no relevance to the issues to be presented in the appraisal of the replacement cost value ("RCV") and actual cash value ("ACV") of the Courthouse as of the date and time of the loss. It is Atlantic Specialty's understanding that Ms. Stewart may have previously had an interest in repairing or restoring the existing Courthouse following the fire, but any such interest she may have had is of no relevance since Webster County will not be repairing or rebuilding the existing Courthouse and instead, will build a new courthouse on a new site in Walthall. *See* "*County, Walthall approve courthouse land deal*" article from the September 10, 2014 *Webster Progress - Times* attached as Ex. G). Determining the RCV and ACV of the Courthouse in the appraisal is essentially an exercise in the hypothetical – even though the scope of the appraisal will be "of the

cost to repair, rebuild or replace the damaged Courthouse . . . ,'' under the parties' Agreement for Appraisal, Webster County will not actually be repairing or replacing the existing Courthouse; rather, it will build a new courthouse on a different site. *See, e.g., Great Am. Ins. Co. of New York v. Jackson Cnty. Sch. Dist. No. 9 Eagle Point*, Nos. 06-3035-PA, 06-3042-PA, 2007 WL 2713894, at *3 (D. Or. Sept. 17, 2007) (court recognizing that determination of replacement cost of damaged school "is an exercise in the hypothetical" since the insured intends to build a new school).

Webster County has also stated a concern in its objections that if Mr. Mockbee is appointed as the umpire, it would be forced to file a motion with the Court to protect from disclosure Ms. Stewart's alleged work product. Webster County claims in its privilege log that Ms. Stewart is a non-testifying expert for Webster County. Regardless, Atlantic Specialty has no concerns that Mr. Mockbee would reveal or disseminate any privileged information he obtained through his representation of Ms. Stewart to the parties' appointed appraisers or otherwise. Webster County's statement that Mr. Mockbee's knowledge of the allegedly privileged information would improperly color his opinions in the appraisal is misplaced. Webster County has not alleged that Mr. Mockbee represented Ms. Stewart in connection with the identified report about which Webster County allegedly has concerns. That would seem logical here since Webster County alleges that the identified report was prepared by Ms. Stewart in her capacity as a non-testifying expert for or on behalf of Webster County.

Simply put, it's Atlantic Specialty's understanding there is no potential, let alone probable, conflict regarding Mr. Mockbee serving as an umpire in the appraisal since any previous interest Ms. Stewart may have had in repairing or restoring the existing Courthouse is of no relevance for the above stated reasons and likewise, the report by Ms. Stewart previously

27

identified by Webster County in its privilege log is of no relevance for purposes of the appraisal and is not at issue.

It is Atlantic Specialty's position that Mr. Mockbee is a well-qualified candidate for umpire. He is both competent and impartial, and the parties would be well-served to have Mr. Mockbee serve as umpire in the appraisal.

7.      The parties submit that the issue of appointment of an umpire is now before this Court for determination. The parties submit that this Court should evaluate the competency and impartiality of the candidates proposed, as well as of any other candidates the Court is inclined to consider on its own merit. The Court is requested to conduct any telephonic interviews of candidates or hearings on this Joint Motion necessary to fully investigate each candidate's competency and impartiality. Once complete, the parties request that this Court appoint a "competent and impartial" umpire to the appraisal panel.

8.      The parties request expedited consideration of this Joint Motion and further that any hearing the Court deems necessary be set as soon as the Court's docket will reasonably allow.

**WHEREFORE, PREMISES CONSIDERED**, Atlantic Specialty Insurance Company and Webster County jointly petition this Court to appoint a "competent and impartial" umpire in this matter.

Respectfully submitted this 28th day of January, 2015.

**ATLANTIC SPECIALTY INSURANCE COMPANY**

**BY:   CARROLL WARREN & PARKER PLLC**

**BY:    /s/ R. Douglas Morgan**
          **R. Douglas Morgan**

28

AND

**WEBSTER COUNTY, MISSISSIPPI**

**BY:    BAKER NICHOLSON, LP**

**BY:    /s/ Tina Nicholson**
**        Tina Nicholson**


**OF COUNSEL**:

Myles A. Parker (MB #8746)
R. Douglas Morgan (MB #100025)
Clifton M. Decker (MB #102740)
CARROLL WARREN & PARKER PLLC
188 E. Capitol Street, Suite 1200
Post Office Box 1005
Jackson, MS 39215-1005
Tel:    601.592.1010
Fax:    601.592.6060
mparker@cwplaw.com
dmorgan@cwplaw.com
cdecker@cwplaw.com

**ATTORNEYS FOR ATLANTIC SPECIALTY**
**INSURANCE COMPANY**

Tina L. Nicholson, Esq.
Baker Nicholson, LLP
9801 Westheimer Rd.
Suite 302
Houston, TX 77042
nicholson@bakernicholson.com

W. Buchanan Meek, Jr., Esq.
Meek & Meek
65 N. Dunn Street
Eupora, MS 39744
meekatty@bellsouth.net

**ATTORNEYS FOR WEBSTER COUNTY, MISSISSIPPI**

826448

## CERTIFICATE OF SERVICE

The undersigned counsel for Atlantic Specialty Insurance Company does hereby certify that on this the 28th day of January, 2015, a true and correct copy of the foregoing instrument was served as indicated below upon the following counsel of record:

Via ECF Filing System
Tina L. Nicholson, Esq.
Baker Nicholson, LLP
9801 Westheimer Rd.
Suite 302
Houston, TX 77042
nicholson@bakernicholson.com

Via U.S. Mail
W. Buchanan Meek, Jr., Esq.
Meek & Meek
65 N. Dunn Street
Eupora, MS 39744
meekkatty@bellsouth.net

**ATTORNEYS FOR WEBSTER COUNTY, MISSISSIPPI**

**/s/ R. Douglas Morgan**
**R. Douglas Morgan**

826448